Exhibit A

# Chapter 106: FEES AND DEPOSITS

[HISTORY: Adopted by the Board of Trustees of the Village of Airmont as indicated in article histories. Amendments noted where applicable.]

**GENERAL REFERENCES**

Building construction and fire prevention — See Ch. 80.
Clearing, filling and excavating — See Ch. 91.
Fees for explosives and blasting permits — See Ch. 103.
Peddling fees — See Ch. 143.
Site development plans — See Ch. 164.
Street excavation fees — See Ch. 177, Art. III.
Subdivision of land — See Ch. 180.
Deposit for planting of shade trees — See Ch. 195, Art. I.
Zoning — See Ch. 210.

## ARTICLE I Schedule of Fees [Adopted 9-14-1992 by L.L. No. 8-1992]

### § 106-1. Title.

This article shall be known as the "Fee Schedule of the Village of Airmont."

### § 106-2. Compliance required.

The Fee Schedule of the Village of Airmont shall be as set forth in this article. No application shall be accepted unless accompanied by payment of the applicable fee.

### § 106-3. Subdivisions. Editor's Note: See Ch. 180, Subdivision of Land.

A. Sketch plat or layout: $200 plus $100 per lot, plus $150 per meeting for appearance at each meeting after first meeting on application.

B. Preliminary plat: $200 plus $100 per lot, plus $150 per meeting for appearance at each meeting after first meeting on application.

C. Final plat: $400 plus $100 per lot, plus $150 per meeting for appearance at each meeting after first meeting on application.

D. Inspections by Village Engineer: 5% of the estimated costs of all public improvements.

E. Recreation fee (money in lieu of land):

    (1) $3,000 per lot.

    (2) For senior housing in the RSH Zone: **[Added 11-27-2000]**

        (a) One bedroom or less: $1,000.

        (b) Two bedrooms: $2,000.

        (c) Two-plus bedrooms: $3,000.

### § 106-4. Site plan approval. Editor's Note: See Ch. 164, Site Development Plan Regulations.

The fee shall be $500 plus $25 per parking space required by Chapter 210, Zoning, plus $150 per meeting for application at each meeting after first meeting on application.

### § 106-5. Application to Zoning Board of Appeals. Editor's Note: See Ch. 210, Zoning.

A. Interpretations of local law: $150.

B. Special permit: $250.

C. Variances.

   (1) Single-family residence: $150.

   (2) All other applications: $250.

D. Appeal from decision of Building Inspector: $150.

E. Other applications: $250.

**§ 106-6. Permits.** Editor's Note: Fees for explosives and blasting permits are included in Ch. 103, Explosives.

A. Clearing, filling and excavation: $100 for first 1,000 square feet of affected area; $50 per each additional 1,000 square feet of affected area (affected area determined by Village Engineer); plus $0.06 per cubic yard removed from site. Editor's Note: See Ch. 91, Clearing, Filling and Excavating.

B. Signs. Editor's Note: See Ch. 210, Zoning.

   (1) Sign permit: $50.

   (2) Temporary signs: Editor's Note: Added at time of adoption of Code (see Ch. 1, General Provisions, Art. I).

      (a) Permit: $0.

      (b) Security deposit: $250 for political signs; and $100 for other temporary signs.

C. Road opening permit: $200 new road or street connection; $75 all other applications; $50 each appearance. Editor's Note: See Ch. 177, Streets and Sidewalks, Art. III, Excavations and openings.

D. Wetlands permit: $100 for first 1,000 square feet of affected area or part thereof; $50 for each additional 1,000 square feet of affected area or part thereof (affected area determined by Village Engineer). Editor's Note: See Ch. 206, Wetlands.

E. Building permits. Editor's Note: See Ch. 80, Building Construction and Fire Prevention.

   (1) Construction of a new dwelling unit or units: $800 per dwelling unit plus 0.005% of cost of construction over $100,000. A new fee must be paid for a reinspection if work is disapproved.

   (2) Other building permits:

| Construction Cost | Permit Fee |
| --- | --- |
| Under $1,000 | $75.00 |
| $1,000 to $14,999 | Additional $10.00 per $1,000 |
| $15,000 to $49,999 | Additional $8.00 per $1,000 |
| $50,000 to and over | Additional $6.00 per $1,000 |

   (3) All building permits shall be issued for a period of one year.

F. Demolition permits. Editor's Note: See Ch. 80, Building Construction and Fire Prevention.

   (1) Fees:

| Demolition Cost | Permit Fee |
| --- | --- |
| Under $1,000 | $60.00 |
| Over $1,000 | Additional $150.00 |
| Over $10,000 | Additional $10.00 per $1,000 |

   (2) All demolition permits shall be issued for a period of one year.

G. Extension of building or demolition permits.

   (1) Fee: $50 minimum or 25% of original permit fee, whichever is greater.

   (2) All extensions of building or demolition permits shall be issued for a period of six months. No more than one extension shall be issued for any permit.

H. Certificate of occupancy/use.

   (1) New construction: $50 minimum or 25% of the building permit fee or demolition permit fee, whichever is greater. This is to be paid at the time of application for building permit or demolition permit.

   (2) Certificate occupancy for change of use within an existing structure: $50.

   (3) Duplicate certificate of occupancy: $50.

   (4) Reinspection fee. For reinspection required after construction has been disapproved or requested by contractor:

      (a) Residential: $50 for the first such reinspection and $75 for each subsequent reinspection.

      (b) Nonresidential: $100 for the first such reinspection and $150 for each subsequent reinspection.

I. Circular driveways. **[Added 2-4-2002 by L.L. No. 1-2002]**

   (1) Road opening permit for circular driveways: $250.

   (2) Fee includes review by Village Engineer only.

   (3) If circular driveway does not comply with conditions set forth in Article VII, § 210-51B, of Chapter 210, Zoning, of the Code of the Village of Airmont, the applicant may reapply for such driveway opening as a site plan approval subject to rules and regulations and fees established by the Village of Airmont for such process.

J. Peddling and soliciting license fee: $45. Editor's Note: See Ch. 143, Peddling and Soliciting. **[Added 5-24-2004 by L.L. No. 1-2004]**

K. Preparation of duplicate tax bills: $5 each. **[Added 2-28-2005 by L.L. No. 1-2005]**

## § 106-7. Building Inspector fees.

A. Violation search: $50.

B. Reinspect violation search: $25.

C. Verification of floodplain status: $15.

D. Verification of structures predating zoning: $50.

E. Copy of certificate of occupancy: $15.

F. Street reports: $15.

## § 106-8. Applications to Village Board.

A. Zone change: $300 for first acre or fraction thereof plus $100 for each additional acre or fraction thereof.

B. All other applications not listed elsewhere: $250.

## § 106-9. Informal appearance.

The fee shall be $150 per meeting for an informal appearance before any Board.

## § 106-10. Conditional use permit.

The fee shall be $250 dollars.

## § 106-11. Applications to Planning Board.

The fee shall be $250 for all applications not listed elsewhere.

## § 106-12. Reimbursement for professional services. [Amended 5-24-2004 by L.L. No. 1-2004]

Reimbursement for professional services shall be as set forth in Article II, Reimbursement for Professional Fees, of this Chapter 106.

### § 106-13. State environmental qualifications (SEQR).

Fee charges pursuant to 6 NYCRR Part 617 to reimburse Village for costs of review.

### § 106-14. Amendment of fees by resolution.

The Board of Trustees is hereby authorized and empowered to amend this Consolidated Schedule of Fees by resolution.

---

## ARTICLE II Reimbursement for Professional Fees [Adopted 3-1-1993 by L.L. No. 14-1993]

### § 106-15. Title.

This article shall be known and referred to as the "Reimbursement of Professional Fees Law of the Village of Airmont".

### § 106-16. Legislative intent.

The intent of this article is to reimburse the Village of Airmont for all expenses incurred in connection with the review of applications made to the Planning Board, the Zoning Board of Appeals and the Village Board of Trustees.

### § 106-17. Fees. [Amended 3-5-1997 by L.L. No. 3-1997]

In addition to the application fees required to be paid by an applicant, the applicant shall also reimburse the Village for any and all fees paid by the Village in connection with the review of such application by the Planning Board, Zoning Board of Appeals, or Board of Trustees. With regard to applications to the Zoning Board of Appeals for variances, the Village Board for zone change applications and the Planning Board for major subdivisions and site plan, the respective Board or CDRC, as the case may be, shall set an amount, in consultation with the Village Engineer, Planner and Attorney to be placed in an escrow account to be maintained by the Village for the purpose of paying the fee statements of the Village professionals in connection with the review of the application. In the event that the escrow account is subsequently reduced to an amount below $500, the Boards shall require the applicant to replenish the account in an amount to be determined by the respective Board. Applicants before the respective Boards for other relief shall pay the fee statements for Village professionals within 30 days of presentation. All applicants shall be presented with a fee statement or statements for such review and/or payment on a periodic basis or upon request.

### § 106-18. Professional services.

Such professional services shall include, but not be limited to, planning consultants, engineer, architects, attorneys and traffic consultants for services rendered in connection with the review of applications for relief as set forth in § 106-17 hereof, by municipal boards and agencies. Fees for such services shall be charged on a time-and-expense or flat basis, as the case may be, and as is customary in the County of Rockland, State of New York, for such services, and shall be at a rate which is competitive with other like professionals in the County of Rockland, State of New York.

### § 106-19. Presentation of fee statements.

Presentation of such statements shall be deemed complete when mailed by the Village to the applicant's designated representative.

## § 106-20. Statement content.

Such statements shall set forth the nature of services performed, the date such services were rendered, the time spent thereon (if such services are rendered on a timed basis) and the name of the party rendering such services. A voucher or other bill rendered to the Village and paid by the Village shall be deemed a fee statement in full compliance with this section, and with § 106-17 hereof.

## § 106-21. Disputed fees.

Any applicant who disputes any fee statement presented to him pursuant to this article may bring a proceeding in the Supreme Court of the State of New York, in and for the County of Rockland, pursuant to Article 78 of the Civil Practice Law and Rules of the State of New York, within 30 days after presentation of such disputed fee statement. The commencement of such a proceeding shall not stay the obligation of the applicant to pay any fee statement presented to him pursuant to this article.

## § 106-22. Failure to reimburse fees.

Any fee statement imposed by this article which remains unpaid at the time the Village certifies its annual tax roll shall become a lien upon the premises for which the application was made. Such unreimbursed fees shall thereupon be levied against the said premises, as if a tax on real property, and in addition to all other taxes, fees, rents or charges which would otherwise be so levied. In the event the affected premises comprise more than one tax lot, then the Village Treasurer shall distribute such levy equally among each such tax lot without regard to assessed value or any other factor.

## § 106-23. Payment of funds required for complete application or action.

An application for approval, or for any intermediate approval process, or for any action covered by this article by the Planning Board, Zoning Board of Appeals, or Board of Trustees shall not be deemed complete for any purpose until such time as the funds required by the agency before which the application is pending shall have been paid to the Village Treasurer.

# ARTICLE VIII Signs [Amended 10-6-1997 by L.L. No. 4-1997]

## § 210-59. Legislative purpose.

A. The purpose of this article is to promote and protect the public health, welfare and safety by regulating existing and proposed outdoor signs of all types and indoor signs visible from outdoors. It is intended to protect property values, create a more attractive economic and business climate, enhance and protect the physical appearance of the Village, protect architectural and historical heritage of the Village, and provide for a more pleasing and enjoyable community. It is further intended to reduce the sign or advertising distractions and obstructions that may contribute to traffic accidents, reduce hazards that may be caused by signs overhanging or projecting over public rights-of-way, and curb the deterioration of the community environment.

B. This article is intended to promote attractive signs which clearly present the visual message in a manner that is compatible with its surroundings. The appearance, character and quality of a community are affected by the location, size, construction and graphic design of its signs. Therefore, such signs should convey their message clearly and simply to enhance their surroundings.

C. It is the further intent of these regulations to encourage that any structure occupied for a commercial or industrial use be identified by an approved sign.

D. The provisions of this chapter shall govern the construction, alteration, repair, display and maintenance of all signs together with their appurtenant and auxiliary devices.

## § 210-60. Compliance required.

All signs permitted in the Village shall comply with the requirements and procedures as set forth in this article.

## § 210-61. Permit required.

Except as specifically exempted in this article, no sign shall hereafter be erected, re-erected, constructed, enlarged or altered without a sign permit.

## § 210-62. Exempt signs.

The following types of signs may be erected and maintained without permits or fees, providing such signs comply with the general requirements of this article and other conditions specifically imposed by the regulations:

A. Historical markers, tablets and statues, memorial signs and plaques; names of buildings and dates of erection when cut into any masonry surface or when constructed of bronze, stainless steel, or similar material; and emblems installed by government agencies, religious or nonprofit organizations: not exceeding four square feet.

B. Flags and insignia of any government, except when displayed in connection with commercial promotion.

C. On-premises directional signs for the convenience of the general public, identifying public parking areas, fire zones, entrances and exits and similar signs, as shown on an approved site development plan or installed pursuant to order of traffic control agencies and shall conform to the Manual of Uniform Traffic Control Devices, New York State Department of Transportation.

D. Nonilluminating warning, private drive, posted or no trespassing signs: not exceeding two square feet per face and not more than one sign per 100 feet of street frontage.

E. One on-premises sign, either freestanding or attached, in connection with any residential building in any zoning district, for approved home professional office or home occupation: not exceeding two square feet and set back at least 15 feet from the edge of pavement, but shall not be within the designated street line. Such sign may state name and vocation only.

F. Number and name plates identifying residents, mounted on house or mailbox: not exceeding one square foot in area.

G. Lawn signs identifying resident: not exceeding one square foot.

H. Private-owner merchandise sale sign for garage sale or auction: not exceeding four square feet on owner's

property only for a period not exceeding seven days.

I. Temporary "for sale," "for rent," real estate sign concerning the premises upon which the sign is located. In a residential zone, one sign not exceeding 15 square feet in sign area, no more than nine square feet of sign area for a single sign face. In a nonresidential zone, one sign not exceeding 30 square feet in sign area; said sign must be set back at least 15 feet from edge of pavement, but shall not be within the designated street lines. All such signs shall be removed within three days after the sale, lease or rental of the premises.

J. Temporary window signs and posters placed on the interior side of the window and not exceeding a total area of 25 percent of the window surface for a period not exceed 30 days.

K. At gasoline service stations:

   (1) Graphics integrated as part of gasoline pumps or attached price signs on gasoline pumps.

   (2) Two auxiliary signs per station, each not exceeding two square feet.

   (3) One portable sign per station, not exceeding 12 square feet and four feet in height while station is open for business.

L. One sign, not exceeding six square feet in sign area in residential districts or 16 square feet in sign area in the nonresidential districts, listing the architect, engineer, contractor and/or owner, on premises where construction, renovation, or repair is in progress. Said signs shall be removed upon occupancy of the structure or 30 days following issuance of a certificate of occupancy, whichever occurs first. Where the contractor's work does not involve a certificate of occupancy or reoccupancy, the sign shall be removed within 30 days. At or adjacent to premises in commercially zoned property owned, occupied or rented by a tax-exempt organization [as said term is defined by Internal Revenue Code Section 501(c)(3)], one portable sign may be maintained by such tax-exempt organization, per location, not to exceed 36 square feet in size. [Amended 1-23-2006 by L.L. No. 2-2006 Editor's Note: This local law provided that it shall become effective retroactively to 9-1-2005, except that no violations of this section shall be issued by the Building Inspector and/or Code Enforcement Officer for any violations from that date to the date of passage of the local law.]

## § 210-63. Prohibited signs.

The following signs are prohibited:

A. Signs illuminated by or containing flashing, intermittent, rotating or moving lights except to show time and temperature.

B. Exterior advertising signs and billboards.

C. Signs representing or depicting to any degree official traffic signs or signals.

D. Signs of a prurient nature or advertising business, commodities or service of a prurient nature or any unlawful business or undertaking.

E. Permanent signs made of cardboard, paper or similar nonpermanent material.

F. Signs mounted on parked vehicles or trailers or other similar mobile advertising media.

G. Signs attached to trees, utility poles, fences, traffic signs, street corner markers, or the like.

H. A sign attached to a building shall not exceed more than 15 inches from the building wall, and no sign or sign support shall be placed upon the roof of any building, nor shall any sign extend above the top of any roof or wall facade.

I. Signs which emit noise, sound or smoke.

J. Animated signs, whether by mechanical or electrical processes, including signs with banners, streamers, spinners or other paraphernalia attached to or associated with such signs.

K. Signs which project over a street or signs which project more than three feet over a public walk.

L.
   Freestanding signs except one ground level, monument-type sign may be permitted in accordance with § 210-65B(5) herein, or alternatively, one freestanding directory sign may be substituted for a freestanding monument sign, if a substantial portion of the businesses for which the sign is proposed are located in buildings that are set back at least 300 feet from the public right-of-way, or if in the Planning Board's

judgment the structure or use to be identified is not sufficiently visible from the street. Freestanding directory signs are subject to regulations found in § 210-65B(6). See definitions for "monument sign" and "freestanding directory sign." Editor's Note: See the definitions of SIGN, MONUMENT-TYPE, and SIGN, FREESTANDING DIRECTORY, in § 210-174. **[Amended 10-1-2001 by L.L. No. 3-2001]**

M.  Illuminated signs on residentially zoned properties.

N.  Exterior signs using neon or phosphorescent colors.

### § 210-64. Temporary signs.

A.  Permit required.

(1)  Any person desiring to post or display political or other temporary signs shall file an application for a temporary sign permit on forms prescribed by the Building Inspector (subject to the next sentence), and such application shall be accompanied by the required fee (if any), including security deposit, to assure removal in accordance with the Standard Schedule of Fees of the Village of Airmont. Editor's Note: See Ch. 106, Fees and Deposits. This local law provided that it shall become effective retroactively to 9-1-2005, except that no violations of this section shall be issued by the Building Inspector and/or Code Enforcement Officer for any violations from that date to the date of passage of the local law. Said form of permit application to be promulgated by the Building Inspector shall require only the name and address of the sign applicant, the purpose and general description of the content of the sign(s) (for sign identification purposes only) and the estimated date of commencement of the display of the sign(s) and removal date. **[Amended 1-23-2006 by L.L. No. 2-2006** Editor's Note: This local law provided that it shall become effective retroactively to 9-1-2005, except that no violations of this section shall be issued by the Building Inspector and/or Code Enforcement Officer for any violations from that date to the date of passage of the local law. **]**

(2)  Political and other temporary signs posted or displayed within the Village of Airmont shall be in accordance with this section.

(3)  Political and other temporary signs shall be granted permits in accordance with this section, provided that such signs are not attached to trees, utility poles, traffic signs, or street corner markers, and further provided that such signs are not placed in a position that will obstruct or impair vision of a roadway or traffic or in any manner create a hazard to the health and safety of the general public. Any such sign not in compliance with the foregoing shall subject both the sign applicant and the owner of the property on which such sign is located to penalties pursuant to § 210-68 of this article. Signs placed in violation of this article may be removed and discarded by the proper Village official if (a) no sign permit had been obtained for the placement of such sign anywhere in the Village of Airmont pursuant to the permit application procedure set forth in this article, (b) such sign is in violation of § 210-64B or C of this article or (c) such sign has been placed in a position that will obstruct or impair vision of a roadway or traffic or in any manner create a hazard to the health and safety of the general public. Except as set forth in the preceding sentence, signs placed in violation of this article shall not be removed by any Village official without the order of a court of competent jurisdiction. **[Amended 5-4-2004 by L.L. No. 1-2004; 1-23-2006 by L.L. No. 2-2006** Editor's Note: This local law provided that it shall become effective retroactively to 9-1-2005, except that no violations of this section shall be issued by the Building Inspector and/or Code Enforcement Officer for any violations from that date to the date of passage of the local law. **]**

(4)  Any licensed real estate broker or owner of a residential home may display a temporary "open house" sign on the property that is for sale for a period of no longer than six hours for each open house, consistent with the requirements of § 210-62I. Additionally, any licensed real estate broker and/or owner of a residential home for sale may display directional signs to the subject premises for sale, provided there are no more than six such directional signs for each open house and that such directional signs are displayed no longer than six hours for each open house. Such directional signs shall also be consistent with the requirements of § 210-62I, except that said directional signs need only be set back at least two feet from the edge of a paved road or the paved portion of a shoulder or existing sidewalk. Furthermore, no "open house" or directional sign to an open house shall have any attachment to the temporary signs, including, but not limited to, balloons, flyers or other items. Any licensed real estate broker may apply for, and maintain with the Building Inspector, an annual, unlimited permit to display "open house" signs and directional signs at various locations within the Village of Airmont consistent with this subsection upon deposit as security with the Building Inspector of $500 by check, which shall not be cashed by the Building Inspector except upon violation of this subsection. An owner of a residential home for sale that is for sale by owner shall deposit as security with the Building Inspector in order to obtain the permit covered by this section $100 by check, which shall not be cashed by the Building Inspector except upon violation of this subsection. The posting or

displaying of any temporary "open house" signs and directional signs included in this section shall require the filing of an application for a temporary sign permit on a form prescribed by the Building Inspector pursuant to § 210-64A(1) of this article. **[Added 1-23-2006 by L.L. No. 2-2006** Editor's Note: This local law provided that it shall become effective retroactively to 9-1-2005, except that no violations of this section shall be issued by the Building Inspector and/or Code Enforcement Officer for any violations from that date to the date of passage of the local law. **]**

B. Penalties for offenses. **[Added 1-23-2006 by L.L. No. 2-2006]**

   (1) Upon conviction of any requirement contained within this section, the Village Justice or any other court of competent jurisdiction may issue a monetary fine of not less than $50 and not more than $125 per offense. The amount of any fines issued hereunder is left to the sound discretion of the court within the confines set forth herein.

   (2) Additionally, each sign that is found to be in violation of this section shall constitute a separate and distinct offense for which the penalties identified in Subsection B(1) of this section may be applied cumulatively by the court.

C. Disposition of fees. **[Added 1-23-2006 by L.L. No. 2-2006** Editor's Note: This local law also redesignated former Subsections B and C as Subsections D and E, respectively. **]**

   (1) Whenever a fee for permit required under § 210-64 is deposited by the Village of Airmont Building Inspector and is held by the Village of Airmont, said fee shall be held as security for any fines issued by a court for violation of this section. In the event a fine issued by the court is less than the amount of the permit application fee, the difference shall be promptly returned by the Village to the applicant promptly after removal of all signs for which a permit has been applied for and the permit is returned by the applicant to the Village of Airmont Building Department.

   (2) Whenever a fee is deposited with the Village of Airmont for a permit under this section, said fee shall be returned by the Village promptly after removal of all signs for which a permit has been applied for and the permit is returned by the applicant to the Village of Airmont Building Department.

D. Political signs.

   (1) Political signs shall be removed within one week immediately following the nomination, primary, election or referendum to which it pertains.

   (2) If such removal is not made within the specified time, the Village shall have such signs removed and the security deposit shall be forfeited to the Village to defray the cost of removal of such signs and for general Village purposes.



   (3) No political sign subject to this chapter may be posted or displayed within the Village more than 45 days prior to the nomination, primary, election or referendum to which it pertains. For the purposes of this subsection, the term "political sign" shall mean any sign that otherwise complies with the dimensional requirements contained in this article and either endorses, recommends, supports, approves, criticizes, condemns, censures or otherwise gives an opinion to: a candidate for elected office; a referendum to be voted upon by a public election; a proposition appearing on a ballot; a political party; or any other matter that is subject to a primary, election or referendum, by general voting. **[Amended 7-23-2007 by L.L. No. 3-2007]**

   (4) In the event that a candidate for a primary election succeeds in said primary election, then and only then shall such candidate's signs be removed within one week immediately following the general election wherein said person is a candidate. **[Amended 5-4-2004 by L.L. No. 1-2004]**

   (5) No political sign may exceed 16 square feet in sign area in a commercial district, nor eight square feet in a residential district.

E. Other temporary signs.

   (1) Signs erected for a relatively short period of time, which may include posters, announcements, banners and pennants and other similar objects. Sign shall be removed immediately following the cessation of the event or special sale or activity mentioned in the permit.

   (2) If such sign is not removed within the specified time, the Village shall have such signs removed and the security deposit shall be forfeited to the Village to defray the cost of removal of such signs and for general Village purposes.

(3) Temporary signs located within a store advertising merchandise for sale in the premises where such temporary signs are displayed shall be exempt from the permit and security deposit provisions.

(4) Temporary signs shall not exceed 16 square feet of sign area in any commercial district and not more than eight square feet of sign area in any residential district.

(5) No temporary sign subject to this section may be posted or displayed for more than 30 days.

## § 210-65. Permanent signs.

A. Permit required.

(1) Application for a sign permit shall be made to the Building Inspector on forms prescribed by the Building Inspector and shall be accompanied by the required fee in accordance with the Standard Schedule of Fees of the Village of Airmont. Editor's Note: See Ch. 106, Fees and Deposits.

(2) The Building Inspector, upon receipt of an application for a sign permit, shall review the same. If the sign requested has been approved on a site development plan or a sign plan approved by the Planning Board, the Building Inspector shall issue a sign permit.

(3) If there is neither a sign plan approval nor site plan approval, the Building Inspector may issue a sign permit if said sign requested meets the criteria contained in Subsection A(5) or B or C, or whichever is applicable. If after a review of the proposed sign, the Building Inspector shall determine the sign does not meet all the criteria of this article, he shall deny such permit.

(4) If the sign permit has been denied by the Building Inspector, the applicant must submit an application to the Planning Board for either site development plan approval or sign plan approval, whichever is applicable. Upon the approval of a site development plan or a sign plan by the Planning Board, a copy of the approved plan shall be transmitted to the Building Inspector.

(5) The Planning Board, in reviewing and approving a site development plan or sign plan, shall provide for a limitation on the size of signs type and characteristics of illumination, number and location, taking into consideration the uses on the site and the reasonable requirement for communicating information to the vehicular or pedestrian public. The Planning Board shall consider the following signs.

(a) Signs must be clearly accessory to the use or uses upon the same lot, and such signs and lighting must be shown to be essential to the conduct of the principal use upon the lot.

(b) The size and content of the sign shall be the minimum essential for legibility and for the provision of information to patrons seeking the particular use described on such sign.

(c) The sign content shall not hawk or peddle and must clearly provide only the information necessary to identify the use upon the lot.

(d) The sign shall not be confused with any traffic sign or other safety device nor be composed of elements depicting in exaggerated size or grotesque style the use upon the lot.

(6) All signs, together with their supportings, braces, guys, anchors, etc., shall be kept in repair and in a proper state of preservation. The display surfaces of all signs shall be kept neatly painted or maintained at all times.

B. Business identification signs (nonresidential districts).

(1) A building devoted to entirely one use or establishment, one indirectly illuminated sign may be located on the building facade facing the frontage street or streets, with a total sign area of each such sign not to exceed 10% of the wall area of each building facade, but in no event more than 100 square feet.

(2) In the case of a building devoted to more than one use or establishment, one indirectly illuminated sign for each such use or establishment may be located on the building facade facing the frontage street or streets, with a total sign length of each such sign not to exceed 70% of the building facade length associated with each such use or establishment, but in no event more than 100 square feet.

(3) The vertical dimension of all business identification signs shall not exceed 2 1/2 feet.

(4) A sign attached to a building shall not exceed more than 15 inches from the building wall except for a perpendicular sign which may extend up to three feet upon approval of the Planning Board. No sign shall be placed on any roof, nor extend above the roof or extend above the wall facade.

(5) If, in the Planning Board's judgment, a structure or use to be identified is not sufficiently visible from the street, one freestanding (monument type) business identification sign may be located on a lot facing each frontage street, as directed by the Planning Board, with a total sign area of each such sign not to exceed 40 square feet of sign area and provided that each such sign shall be set back a minimum of 15 feet from the edge of pavement, but not within the designated street line. The top of such sign shall not be higher than four feet above average finished grade. Such signs shall not be illuminated by exposed tubes, bulbs, or similar and there shall be no exterior spot lighting or other illumination of such sign that will cause any glare on the street or any adjoining property. Said sign shall only identify the occupant of the property. It may identify a retail center, but not the individual business.

(6) Freestanding directory signs may be permitted subject to the following regulations: **[Added 10-1-2001 by L.L. No. 3-2001]**

   (a) Such sign shall be permitted to identify the name of the shopping center, and the names of the businesses within the shopping center. If the name of a business is included within the name of the shopping center or plaza, such business shall not be included a second time on the sign as an individual business. No description of service provided shall be permitted on the sign, unless it is part of the name of the business.

   (b) No more than one freestanding sign shall be permitted to identify any or all businesses in a particular shopping center or plaza whether said particular center or plaza is on one or more lots.

   (c) Design, lighting, and lettering, and color shall be uniform on the sign and lettering for all business within business name portion of the sign shall be identical in height and style.

   (d) Such sign shall not interfere with sight distance requirements at driveways to and from the property on which the sign is proposed.

   (e) The height of the sign shall be restricted to 17 feet and width shall be restricted to 10 feet, but in no event shall such sign exceed the total sign area provided in Subsection (g) below.

   (f) No portion of the sign shall be less than six feet from the ground in order to assure adequate site distance.

   (g) The total sign area shall be restricted to 136 square feet for a two-sided sign, in accordance with the definition of sign area in Article XVIII of this Zoning Code or 68 feet for a single side of the sign. The sign area for all business name signs and the shopping center name sign shall be used when computing the total sign area.

   (h) Each business name sign shall not exceed one foot in height by four feet in length on each side, except for the name of the shopping center, which shall not have a height which exceeds three feet on each side or eight feet in length.

   (i) The sign shall be set back at least 15 feet from the pavement, and shall not be permitted within the designated street line.

C. Business identification signs (residential districts).

(1) One sign affixed to the front facade of the principal building may be provided and shall not exceed 5% of said building facade sign wall area, but in no event more than 50 square feet of sign area. Such sign may be indirectly illuminated by a constant light integral to the sign, but may not be illuminated after 11:00 p.m.

(2) The vertical dimension of all business identification signs in a residential district shall not exceed two feet.

(3) A sign attached to a building shall not extend more than 15 inches from the building wall, and shall not be located on the roof or extend above the roof level of the building, or extend above any wall facade.

(4) If in the Planning Board's judgment, a structure or use to be identified is not sufficiently visible from the street, one freestanding (monument type) business identification sign may be located on a lot facing each frontage street, as directed by the Planning Board, with a total sign area of 20 square feet in area, located at least 15 feet from edge of pavement but not within the designated street line. The top of such shall not be higher than four feet above the average finished grade. Such signs may be indirectly illuminated by a constant light integral to the sign.

D. Places of worship, libraries, museums, social clubs.

    (1) One sign or bulletin board, customarily incidental to such uses, may be erected on the premises of such institutions for each entrance on a different street or highway.

    (2) Such sign may not exceed 24 square feet in sign area and shall be set back a minimum of 15 feet from the edge of pavement but not within the designated street line.

    (3) Signs may be illuminated but shall not be illuminated by exposed tubes, bulbs, or similar exposed light sources and there shall be no exterior spot lighting or other illumination of any such sign that will cause any glare on the street or any adjoining property. In residential zones, said illumination shall be turned off by 11:00 p.m.

## § 210-66. Nonconforming signs.

A. Any sign legally in existence prior to the effective date of this chapter, but which does not conform to the applicable provisions of this chapter, shall be deemed nonconforming, and the display of such sign shall be permitted to continue.

B. A nonconforming sign shall not be enlarged or replaced by another nonconforming sign. Any maintenance or repair of a nonconforming sign shall not cost more than 50% of the current depreciated value of the sign as of the date of the repair.

## § 210-67. Removal of signs.

A. Any sign, including all structural supports and frame, now or hereafter existing which no longer identifies a use on the subject premises, or is not being maintained, shall be taken down and removed by the owner, agent or person having the beneficial use of the building or structure upon which such sign may be found within 10 days after written notification from the Building Inspector, and upon failure to comply with such notice within the time specified in such order, the Building Inspector is hereby authorized to cause removal of such sign, with this cost assigned back to the property owner.

B. Dangerous signs. Should a sign be or become insecure or in danger of falling or otherwise unsafe in the opinion of the Building Inspector, the owner thereof, or person maintaining the same shall, upon receipt of written notice from the Building Inspector and in any case within five days thereafter, secure the same in a manner to be approved by the Building Inspector. If such order is not complied with, the Building Inspector is hereby authorized to cause removal of such dangerous sign, and any expense incident thereto shall be paid by the owner of the building, structure or premises on which such sign is located. When any sign is in such dangerous condition as to be immediately dangerous to the safety of the public, the Building Inspector is hereby authorized to take such action as in his opinion shall be necessary to protect the public or property, and any expense incident thereto shall be paid by the owner of the sign.

## § 210-68. Enforcement.

Any person, firm or corporation, whether as owner, lessee, agent or employee, who proceeds to erect, re-erect, construct or structurally alter any sign without first applying for and obtaining the necessary permit, or who in any other way violates any provision of this article, shall be liable to penalties as imposed in Article XIV, § 210-152, of this chapter.

## § 210-69. Adjustment of regulations.

Where the Planning Board finds that, because of special circumstances of a particular site, extraordinary difficulties may result from strict compliance with these regulations, it may adjust the regulations so that substantial justice may be done and the public interest secured, provided that any such adjustment will not have the effect of nullifying the intent and purpose of these regulations. In granting any adjustment, the Planning Board shall attach such conditions as are, in its judgment, necessary to secure substantially the objectives of the regulations so adjusted.

## § 210-70. (Reserved)

## § 210-71. (Reserved)

Exhibit B

# VILLAGE OF AIRMONT
## BUILDING & ZONING DEPARTMENT
### 251 CHERRY LANE; P.O. BOX 578
### TALLMAN, NY 10982
### 845-369-8813 * FAX 845-357-8307

IAN SMITH; BUILDING INSPECTOR                                  ROY DOUGHERTY; CODE ENFORCEMENT
SCOTT MEIER, FIRE INSPECTOR

# _TEMPORARY SIGN PERMIT_

**DATE ISSUED:** 7 / 12 / 07

**DATE OF EXPIRATION:** 7 / 12 / 08

**NAME OF APPLICANT:** Realty Team Corp.

**ADDRESS:** 1604 Rte 202 Pomona Ny 10970  **PHONE:** 845-364-0007

**LOCATION OF SIGN (S):**

| 1ST | | 4TH | |
|-----|-----|-----|-----|
| 2ND | | 5TH | |
| 3RD | | 6TH | |

**PURPOSE OF SIGNS (S):** Open houses / Real Estate

**DATE OF EVENT TO WHICH SIGN PERTAINS:** ___ / ___ / ___

PURSUANT TO THE ZONING LOCAL LAW ARTICLE VIII OF THE VILLAGE OF AIRMONT, AN APPLICATION FOR A TEMPORARY SIGN PERMIT MUST BE ACCOMPANIED BY THE PAYMENT OF A SECURITY DEPOSIT, AS A GUARANTEE THAT EACH SUCH SIGN WILL BE REMOVED BEFORE THE EXPIRATION DATE SPECIFIED ON THE PERMIT. A SECURITY DEPOSIT IN THE AMOUNT OF TWO HUNDRED FIFTY DOLLARS ($250.00) MUST BE POSTED FOR POLITICAL SIGNS AND ONE HUNDRED DOLLARS ($100.00) FOR ALL OTHER TEMPORARY SIGNS.

NO SIGN MAY BE ATTACHED TO FENCES, TREES, UTILITY POLES, TRAFFIC SIGNS, STREET CORNER MARKERS OR THE LIKE ON, OVER OR IMMEDIATELY ADJACENT TO ANY PUBLIC PROPERTY WITHIN THE VILLAGE OF AIRMONT AND FURTHER PROVIDED THAT SUCH SIGNS ARE NOT PLACED IN A POSITION THAT WILL OBSTRUCT OR IMPAIR VISION OR TRAFFIC OR IN ANY MANNER CREATE A HAZARD OR DISTURBANCE TO THE HEALTH AND WELFARE OF THE GENERAL PUBLIC.

THE APPLICANT SHALL NOTIFY THIS OFFICE UPON THE REMOVAL OF ALL SIGNS TO WHICH THIS PERMIT PERTAINS. UPON NOTIFICATION, THIS DEPARTMENT WILL CONDUCT AN INSPECTION FOR COMPLIANCE BEFORE THE SECURITY DEPOSIT IS RETURNED

**OVER**

**VILLAGE OF AIRMONT**
**BUILDING & ZONING DEPARTMENT**
**251 Cherry lane; P.O. BOX 578**
**AIRMONT, NY 10982**
**845-369-8813 * FAX 845-357-8307**
RONALD SCHUCKER, CODE ENFORCEMENT
WALTER MORRIS, FIRE INSPECTOR                    BRENDAN CASTRONUOVO, CODE ENFORCEMENT

# TEMPORARY SIGN PERMIT

DATE ISSUED: _9, 6, 07_

DATE OF EXPIRATION: _9, 6, 08_

NAME OF APPLICANT: _Blue Sky Realty_

ADDRESS: _20 Lobby Pitt Mosff_    PHONE: _37/8471_

LOCATION OF SIGN (S):
1ST _____    4TH _____
2ND _____    5TH _____
3RD _____    6TH _____

PURPOSE OF SIGNS (S): _Open Hses —_

_____

DATE OF EVENT TO WHICH SIGN PERTAINS: _____/_____/_____

PURSUANT TO THE ZONING LOCAL LAW ARTICLE VIII OF THE VILLAGE OF AIRMONT, AN APPLICATION FOR A TEMPORARY SIGN PERMIT MUST BE ACCOMPANIED BY THE PAYMENT OF A SECURITY DEPOSIT, AS A GUARANTEE THAT EACH SUCH SIGN WILL BE REMOVED BEFORE THE EXPIRATION DATE SPECIFIED ON THE PERMIT. A SECURITY DEPOSIT IN THE AMOUNT OF TWO HUNDRED FIFTY DOLLARS ($250.00) MUST BE POSTED FOR POLITICAL SIGNS AND ONE HUNDRED DOLLARS ($100.00) FOR ALL OTHER TEMPORARY SIGNS.

NO SIGN MAY BE ATTACHED TO FENCES, TREES, UTILITY POLES, TRAFFIC SIGNS, STREET CORNER MARKERS OR THE LIKE ON, OVER OR IMMEDIATELY ADJACENT TO ANY PUBLIC PROPERTY WITHIN THE VILLAGE OF AIRMONT AND FURTHER PROVIDED THAT SUCH SIGNS ARE NOT PLACED IN A POSITION THAT WILL OBSTRUCT OR IMPAIR VISION OR TRAFFIC OR IN ANY MANNER CREATE A HAZARD OR DISTURBANCE TO THE HEALTH AND WELFARE OF THE GENERAL PUBLIC.

THE APPLICANT SHALL NOTIFY THIS OFFICE UPON THE REMOVAL OF ALL SIGNS TO WHICH THIS PERMIT PERTAINS. UPON NOTIFICATION, THIS DEPARTMENT WILL CONDUCT AN INSPECTION FOR COMPLIANCE BEFORE THE SECURITY DEPOSIT IS RETURNED

**OVER**

### VILLAGE OF AIRMONT
### BUILDING & ZONING DEPARTMENT
### 251 CHERRY LANE; P.O. BOX 578
### TALLMAN, NY 10982
### 845-369-8813 * FAX 845-357-8307

IAN SMITH; BUILDING INSPECTOR                    ROY DOUGHERTY; CODE ENFORCEMENT
                    SCOTT MEIER, FIRE INSPECTOR

## _TEMPORARY SIGN PERMIT_

**DATE ISSUED:** 10 / 10 / 07

**DATE OF EXPIRATION:** 10 / 10 / 08

**NAME OF APPLICANT:** Rodeo Realty Inc. - Esther Lavut
(PRINT CLEARLY)

**ADDRESS:** 71 Rte 59     **PHONE:** 845 364-0195
(PRINT CLEARLY)

**PURPOSE OF SIGNS (S):** Open house

**DATE OF EVENT TO WHICH SIGN PERTAINS:** _____ / _____ / _____

PURSUANT TO THE ZONING LOCAL LAW ARTICLE VIII OF THE VILLAGE OF AIRMONT, AN APPLICATION FOR A
TEMPORARY SIGN PERMIT MUST BE ACCOMPANIED BY THE PAYMENT OF A SECURITY DEPOSIT, AS A GUARANTEE
THAT EACH SUCH SIGN WILL BE REMOVED BEFORE THE EXPIRATION DATE SPECIFIED ON THE PERMIT. A SECURITY
DEPOSIT IN THE AMOUNT OF TWO HUNDRED FIFTY DOLLARS ($250.00) MUST BE POSTED FOR POLITICAL SIGNS AND
ONE HUNDRED DOLLARS ($100.00) FOR ALL OTHER TEMPORARY SIGNS.

NO SIGN MAY BE ATTACHED TO FENCES, TREES, UTILITY POLES, TRAFFIC SIGNS, STREET CORNER MARKERS OR THE
LIKE ON, OVER OR IMMEDIATELY ADJACENT TO ANY PUBLIC PROPERTY WITHIN THE VILLAGE OF AIRMONT AND
FURTHER PROVIDED THAT SUCH SIGNS ARE NOT PLACED IN A POSITION THAT WILL OBSTRUCT OR IMPAIR VISION
OR TRAFFIC OR IN ANY MANNER CREATE A HAZARD OR DISTURBANCE TO THE HEALTH AND WELFARE OF THE
GENERAL PUBLIC.

THE APPLICANT SHALL NOTIFY THIS OFFICE UPON THE REMOVAL OF ALL SIGNS TO WHICH THIS PERMIT PERTAINS.
UPON NOTIFICATION, THIS DEPARTMENT WILL CONDUCT AN INSPECTION FOR COMPLIANCE BEFORE THE SECURITY
DEPOSIT IS RETURNED

### OVER

Exhibit C

**VILLAGE OF AIRMONT**
**BOARD OF TRUSTEES**
**MAY 21, 2007**

PRESENT:  MAYOR DENNIS KAY
JOSEPH MEYERS, DEPUTY MAYOR
VERONICA BOESCH, TRUSTEE
ANTHONY VALENTI, TRUSTEE
JOEL GROSSBARTH, VILLAGE ATTORNEY
DONNA LOPOPOLO, DEPUTY CLERK

ABSENT:   MAUREEN SCHWARZ, TRUSTEE

Mayor Kay called the meeting to order and led everyone in the Pledge of Allegiance.

**CONTINUATION OF DISCUSSION REGARDING ROAD RESURFACING**

At the Village Board meeting of May 7, White Road, Tallman Place and Stage Street were approved for paving in 2007. At tonight's meeting, Smith Hill Road (from Lorna Lane to Cherry Lane) was added to the list.

**CONTINUATION OF DISCUSSION ON PROPOSED LOCAL LAW TO REQUIRE MAINTENANCE OF AT LEAST A ONE-CAR GARAGE**

The Village attorney will research this item and present his findings to the Village Board at the next meeting on June 4, 2007.

**CONTINUATION OF CORRESPONDENCE FROM CENTERPOINT ENGINEERING RE: DEDICATION OF ROADS AT CARDINAL HILL SUBDIVISION**

This item was moved to the meeting of June 18, 2007.

**CORRESPONDENCE FROM SCHEINERT & KOBB RE: MONSEY JEWISH CENTER**

Mr. Rubin Josephs, representing the Monsey Jewish Center, addressed the Board. There is a water problem at the cemetery. Mr. Josephs is requesting that the 100' buffer be reduced to 50' to allow for drainage work and possibly a fence. He has appeared in front of the CDRC and Zoning Boards on more than one occasion and will be going back to the Zoning Board to comply with their request for additional information. He has been paying the professional fees associated with these appearances and can no longer afford to pay anything more. He is requesting any future fees to be waived or postponed for two years.

The Village Board of Trustees recommended that he proceed with his application to the Zoning Board of Appeals for reduction of the buffer and then to the Planning Board for a revised site plan.

**CORRESPONDENCE FROM MR. LEONARD HOM REGARDING DRAINAGE ISSUES AT 191 ROUTE 59**

This item was moved to the meeting of June 4, 2007.

**CORRESPONDENCE FROM CARDINAL DEVELOPMENT REGARDING PARKLAND DEDICATION**

The Village Clerk will inform the Code Enforcer to contact the owner of the property in reference to property maintenance.

BOT 5/21/07

Once this property is dedicated the Village will need a 5-G Agreement with the Town of Ramapo to maintain the property.

It was also noted that the lock on the gate at White Road is broken. The Village Clerk will contact the Town of Ramapo to have it replaced.

## RESOLUTION TO APPROVE PROPOSAL OF ACTION PLUMBING FOR WORK AT VILLAGE HALL LPROPERTY

WHEREAS, the Village's Board instructed the Village Clerk to solicit bids for plumbing work at the Village Hall property located at 251 Cherry Lane;

WHEREAS, pursuant to the Village of Airmont's procurement policy (Section A217-3) the Village Clerk solicited bids from various plumbing contractors and received three written bids for the proposed work, and

WHEREFORE, Action Plumbing was the lowest responsible bidder for the proposed work solicited;

NOW THEREFORE, it is hereby

RESOLVED, the proposal of Action Plumbing Inc. in the amount of $ 7,385.00 is hereby accepted pursuant to the terms of the attached proposal; and it is further

RESOLVED, that the Village Clerk is authorized to accept the proposal and make all necessary arrangements to immediately commence plumbing work with Action Plumbing, Inc.

Trustee Meyers moved the Resolution and Trustee Boesch seconded.

The board was polled with the following results:

AYE: Meyers – Boesch – Kay          NAYE: Valenti

Motion carried 3 – 1. Mayor Kay declared the motion carried and directed the Clerk to file same.

## RESOLUTION TO ACCEPT CONDITIONAL DONATION OF LAWN MAINTENANCE FROM STEVE'S LAWNS, INC. FOR WORK AT VILLAGE HALL PROPERTY

WHEREAS, the Village's Board instructed the Village Clerk to solicit bids for lawn maintenance work at the Village Hall property located at 251 Cherry Lane pursuant to specific specifications drafted by the Village Attorney; and

WHEREAS, pursuant to the Village of Airmont's procurement policy (Section A217-3) the Village Clerk solicited bids from various lawn and landscaping contractors and received three written bids for the proposed work, and

WHEREFORE, Steve's Lawn's Inc. submitted a written proposal offering to perform the work outlined in the work specifications at no charge in the form of a conditional donation to the Village and said submission is the lowest responsible bidder;

NOW THEREFORE, it is hereby

RESOLVED, the conditional donation of Steve' Lawn, Inc. to perform the work outlined in the lawn specifications is hereby accepted pursuant to the terms of the attached proposal; and it is further

2

RESOLVED, that the Village Clerk is authorized to accept the proposal and make all necessary arrangements to immediately commence lawn maintenance work with Steve's lawn, Inc.; and it is further

RESOLVED, that in consideration of the generous donation by the aforementioned contractor, the Village Board hereby authorizes Steve's Lawn to place two (2) signs no larger than 2' x 4', low to the ground in yellow or 1 double-sided sign on Village Hall property for the cutting season only, subject to the Mayor's approval, indicating the conditional donation made to the Village; and it is further

RESOLVED that Steve's Lawn provide the village with an insurance certificate and that any sign application fees that would normally be charged in connection with said signs are hereby waived by the Village Board.

Trustee Meyers moved the Resolution as amended and Trustee Valenti seconded. All were in favor and motion carried unanimously. Mayor Kay declared the motion carried unanimously and directed the Clerk to file same.

## MOTION TO RELEASE ANY AND ALL LETTERS OF CREDIT AND/OR CASH ESCROWS BEING HELD ON BEHALF OF PULTE HOMES, INC.

This item was moved to the next meeting on June 4, 2007.

## RESOLUTION RETURNING FULL/PARTIAL ESCROW TO CARDINAL DEVELOPMENT, LLC

This item was moved to the next meeting on June 4, 2007.

## MEMO FROM BUILDING INSPECTOR REGARDING REQUEST FOR REFUND OF ZBA APPLICATION FEE FOR 2 NORTH LORNA LANE

Nadege Nelson of 2 North Lorna Lane is requesting a refund in the amount of $150 since she no longer needs a variance for the work being done at her house. The Village has received two bills in regard to this application, one from the Journal News and the other from Rockland & Orange Reporting totaling $122. Mrs. Nelson will be refunded the difference.

## MOTION TO RETURN PARTIAL ZBA APPLICATION FEE IN THE AMOUNT OF $28 TO NADEGE NELSON OF 2 NORTH LORNA LANE

Trustee Meyers moved the motion and Trustee Valenti seconded. All were in favor and motion carried. Mayor Kay declared the motion carried and directed the Clerk to file same.

**Political Signs-** A discussion regarding political signs took place. Trustee Meyers stated political signs are allowed to be displayed 45 days prior to an election. A number of signs have been placed around the Village that are political in nature but not candidate oriented, such as the cell tower signs. Preserve Ramapo has placed some signs but the code enforcer has been removing them since they did not have a sign permit. When a representative of Preserve Ramapo applied for the permit he was informed that signs could only be out 45 days before an election. There is some question as to what the definition of a political sign is. Are signs that have a candidate's name and specific election date different from signs that just have a political message? Should they be considered temporary signs and allowed to be put up for 30 days with no time restriction as to when they can be put up? A public hearing will be scheduled at the next Village Board meeting regarding clarification of the definition of a political sign.

**TZ Bridge/287 Corridor Resident Liaison Committee** -Trustee Meyers reported on a planning session he attended last Friday along with Trustee Boesch, Joan Schroeder and

3

BOT – 5/21/07

Joan Connors of The Retreat at Airmont. It was held by Regional Planning Associates who have been hired by Provident Bank and Orange & Rockland to help local communities address issues associated with the Tappan Zee Bridge/287 Corridor situation. The committee took a bus tour to see the locations which would be impacted including the areas in Airmont where a proposed bus and/or train station by the thruway at Exit 14B and an additional thruway entrance/exit by Besen Parkway (Exit 14X ) are being considered.

The attendees were then broken up into groups and assigned a facilitator and a designer to help them decide how they would deal with the different options proposed and what could be done in terms of development or non-development around the different areas affected within our community. Trustee Boesch stated the "Airmont Group" was opposed to an elevated train station and "fly-overs" which are elevated ramps as entrances and exits to the thruway. A representative from the MTA suggested there was a possibility of going underneath Airmont Road having the trains at grade level or slightly beneath grade level. The group also discussed ways to beautify Rt. 59 and options for the Grand Union shopping center.

## APPROVAL OF VOUCHERS

Trustee Meyers moved to amend and approve the vouchers in the amount of $36,119.40 and Trustee Valenti seconded. All were in favor and motion carried. Mayor Kay declared the motion carried and directed the Clerk to file same. (Futurescapes bill of $1035.00 was deducted.)

## APPROVAL OF MINUTES

**Minutes of May 7, 2007-** Trustee Valenti motioned to approve the minutes of May 7 and Trustee Boesch seconded. All were in favor and motion carried. Mayor Kay declared the motion carried and directed the Clerk to file same.

**NYS Office of Children and Family Services Award-** Trustee Valenti announced the Village of Airmont has been awarded $10,000 by the NYS Office of Children & Family Services to put towards the renovation of the new Village Hall for a Youth and Senior Center. The application must be submitted by June 10, 2007.

## MOTION AUTHORIZING TRUSTEE VALENTI TO SUBMIT APPLICATION FOR AWARD IN THE AMOUNT OF $10,000 TO THE NYS OFFICE OF CHILDREN AND FAMILY SERVICES FOR THE NEW VILLAGE HALL AND COMMUNITY CENTER

Trustee Meyers moved the motion and Trustee Boesch seconded. All were in favor and motion carried. Mayor Kay declared the motion carried and directed the Clerk to file same.

## MOTION TO ENTER INTO EXECUTIVE SESSION TO DISCUSS POTENTIAL PURCHASE OF REAL ESTATE

Trustee Meyers moved the motion and Trustee Valenti seconded. All were in favor and motion carried.

## MOTION TO COME OUT OF EXECUTIVE SESSION

Mayor Kay moved the motion and Trustee Valenti seconded. All were in favor and motion carried.

BOT – 5/21/07

**ADJOURNMENT**

Mayor Kay moved the motion to adjourn the meeting and Trustee Valenti seconded. All were in favor and the meeting ended at 10:20 pm.

Respectfully submitted,

Donna Lopopolo
Deputy Village Clerk

5

VILLAGE OF AIRMONT
BOARD OF TRUSTEES
CHALLENGER CENTER
JULY 23, 2007
8 PM

PRESENT:    MAYOR DENNIS KAY
            JOSEPH MEYERS, TRUSTEE
            VERONICA BOESCH, TRUSTEE
            MAUREEN SCHWARZ, TRUSTEE
            ANTHONY VALENTI, TRUSTEE
            JOEL GROSSBARTH, VILLAGE ATTORNEY
            DONNA LOPOPOLO, DEPUTY CLERK

Mayor Kay called the meeting to order and led everyone in the Pledge of Allegiance.

## CONTINUATION OF PUBLIC HEARING ON MAINTENANCE OF A ONE-CAR GARAGE

This item was continued from the previous meeting of July 9, 2007. The topic discussed was a proposed Local Law amending Article III of Chapter 210 of the Code of the Village of Airmont with respect to Garages in Residential Zoning Districts. The proposed law states that every residential property within a Residential Zone contained in Chapter 210 of the Village Code or any other private residence within the Village of Airmont shall contain a private garage as defined in subchapter (a) or such other number of garages that may be required in each residential zone. The discussion focused on the content of Section 4 of the law which addresses requirements for residential dwellings that exist as of the effective date of this local law. The Village Attorney will revise this section of the law to include requirements for any private garages that have been eliminated prior to the effective date of this local law that did not obtain the required permits.

## MOTION TO CLOSE PUBLIC HEARING

Mayor Kay moved the motion to close the Public Hearing and Trustee Meyers seconded. All were in favor and motion carried.

## MOTION TO ADOPT LOCAL LAW #2 OF 2007 AMENDING ARTICLE III OF CHAPTER 210 OF THE CODE OF THE VILLAGE OF AIRMONT WITH RESPECT TO GARAGES IN RESIDENTIAL ZONING DISTRICTS WITH CHANGES AS READ BY THE VILLAGE ATTORNEY

Trustee Meyers moved the motion and Trustee Valenti seconded. The Board was polled with the following results:

AYE: Schwarz, Meyers, Valenti, Boesch

Motion carried 4 in favor and 0 opposed. Mayor Kay declared the motion carried and directed the Clerk to file same.

BOT 7/23/07

## PUBLIC HEARING REGARDING PROPOSED LOCAL LAW TO AMEND SIGN LAW

A public hearing was held regarding a proposed Local Law to amend the Zoning Code of the Village of Airmont to amend Article VIII, Section 210-64(D) of the Village of Airmont Zoning Code with respect to certain political signs. The purpose of the proposed amendment is to clarify the definition of a political sign.

## MOTION TO CLOSE PUBLIC HEARING

Mayor Kay moved the motion to close the Public Hearing and Trustee Meyers seconded. All were in favor and motion carried.

## MOTION TO ADOPT LOCAL LAW #3 OF 2007 AMENDING ARTICLE VIII SECTION 210-64(D) OF THE CODE OF THE VILLAGE OF AIRMONT WITH RESPECT TO POLITICAL SIGNS

Trustee Meyers moved the motion and Trustee Schwarz seconded. The Board was polled with the following results:

AYE: Boesch, Valenti, Meyers, Schwarz

Motion carried 4 in favor and 0 opposed. Mayor Kay declared the motion carried and directed the Clerk to file same.

## RESOLUTION TO SCHEDULE A PUBLIC HEARING FOR PROPERTY MAINTENANCE AT 406 ROUTE 59 FOR AUGUST 6, 2007 AT 8 PM

Trustee Meyers moved the motion and Trustee Valenti seconded. All were in favor and motion carried. Mayor Kay declared the motion carried and directed the Clerk to file same.

## MOTION TO EXTEND BUILDING MORATORIUM FOR AN ADDITIONAL THREE MONTHS TO EXPIRE ON OCTOBER 23, 2007

Trustee Meyers moved the motion and Trustee Valenti seconded. All were in favor and motion carried. Mayor Kay declared the motion carried and directed the Clerk to file same.

## MEMO FROM BUILDING INSPECTOR REGARDING POOL BARRIER REQUIREMENTS

The building inspector is requesting a change in Section 210-85B of the Village Code regarding fencing of above ground pools. The Village Attorney will speak to the building inspector regarding his memo and report back to the Board at the next meeting.

## APPROVAL OF MINUTES

Minutes of July 9, 2007- Trustee Valenti moved to approve the minutes of 7/9/07 and Trustee Meyers seconded. All were in favor and motion carried.

## APPROVAL OF VOUCHERS

Mayor Kay made a motion to approve the vouchers of July 23, 2007 in the amount of $153,011.38 and Trustee Meyers seconded. All were in favor and motion carried.

BOT 7/23/07

FAA Flight Plan- Trustee Meyers announced there will be a meeting on Monday, July 30 at 6pm at the St. Lawrence Recreation Center, 115 Torne Valley Road, Hillburn, to address the proposed plan to re-route planes headed for Newark Airport which would dramatically increase air traffic over Westchester, Rockland and Bergen Counties. Mayor Jeff Oppenheim of Montebello has proposed a plan to move the corridor of airport traffic from the populated areas of Rockland to a corridor several miles west over unpopulated parkland.

## RESOLUTION CALLING UPON THE FEDERAL AVIATION ASSOCIATION TO MODIFY ITS PROPOSED NEW YORK/NEWJERSEY/PHILADELPHIA METROPOLITAN AREA AIRSPACE REDESIGN

WHEREAS, the Federal Aviation Administration has developed a new Airspace Redesign Proposal which would route hundreds of incoming flights to Newark Airport approximately 5000 feet over Airmont, Chestnut Ridge, Monsey, Spring Valley and Pearl River; and

WHEREAS, Newark arrivals do not currently fly over Rockland County; and

WHEREAS, the proposed air traffic pattern would allow for such flights from 6AM to Midnight; and

WHEREAS, on behalf of the residents of Airmont this Village Board of Trustees wishes to urge the FAA to consider modifications to the proposal air traffic pattern that would negatively impact the least amount of residents as possible;

NOW THEREFORE, BE IT RESOLVED, that the Board of Trustees of the Village of Airmont hereby calls upon the FAA to study modifications to its airspace redesign plan which would provide for arriving flights to Newark Airport to be routed over largely unpopulated parkland areas within Orange and Rockland County so that the least number of residents as possible would be negatively impacted by the proposed airspace redesign plan.

BE IT FURTHER RESOLVED, that a copy of this resolution be forwarded to Senators Schumer and Clinton, Congressman Eliot Engel and the Federal Aviation Administration (Steven Kelly).

Trustee Meyers moved the motion and Trustee Valenti seconded. All were in favor and motion carried unanimously. Mayor Kay declared the motion carried and directed the Village Clerk to file same.

## MAYOR AND TRUSTEES REPORT

Village Hall/Community Center- Mayor Kay announced the floor plans for the new Village Hall and Community Center have been finalized.

Village Tax information on the website- Mayor Kay stated the Village is considering accepting tax payments through a link that would be connected to the website. Residents would be charged a minimal fee to pay their taxes electronically or by credit card. More information will follow in the future.

Airmont Day- Airmont Day will be held on September 23, 2007. Community Programs Committee Chairperson, Stacey Lichtenthal, has informed the Board that all plans are moving along in preparation for a successful and fun day.

Interstate Toyota (formerly Paul Miller Toyota)- The Toyota Dealership on the corner of Rt. 59 and New County Road is now Interstate Toyota. It looks much nicer now that the new owners have paved the old gas station property.

BOT 7/23/07

Cherry Lane & Rt. 59 traffic light- The Mayor would like the traffic light at the Cherry Lane and Route 59 intersection re-evaluated. Perhaps a staggered light at that location could be considered. The Village Clerk will send a letter to the NYSDOT and Rockland County Highway Department to re-evaluate the situation.

**MOTION TO ENTER INTO EXECUTIVE SESSION TO DISCUSS POTENTIAL LITIGATION**

Mayor Kay moved the motion and Trustee Boesch seconded. All were in favor and motion carried.

**MOTION TO END EXECUTIVE SESSION**

Mayor Kay moved the motion and Trustee Boesch seconded. All were in favor and motion carried.

**MOTION TO CANCEL PUBLIC HEARING REGARDING HOME HOUSES OF WORSHIP SCHEDULED FOR AUGUST 6, 2007 AT 8 PM**

Mayor Kay moved the motion and Trustee Valenti seconded. All were in favor and motion carried. Mayor Kay declared the motion carried and directed the Clerk to file same.

**MOTION TO ADJOURN**

Mayor Kay moved the motion to adjourn the meeting and Trustee Valenti seconded. All were in favor and the meeting ended at 10:10 pm.

Respectfully submitted,

Donna Lopopolo-Deputy Clerk

4

Exhibit D

# Preserve Ramapo's
# 10 Point Plan
# to Save Our Town


PreserveRamapo.org

**1. Repeal the "Adult Student Housing" Law**
The construction of huge housing complexes in four specifically zoned areas in Ramapo is being allowed because of an unjust Town law that never should have been passed. That law should now be repealed.

*Why?* *Because multiple-family homes have no place in neighborhoods that are zoned for single family homes. These developments are a bad fit to existing communities and add a huge load to our already overburdened resources.*

**2. Place a moratorium on the building of high-density housing**
Construction of multi-family housing in Ramapo should be halted for one year.

*Why?* *Because we need the time to review the impact of projected growth and potential overdevelopment on our town's traffic, water resources, sewer capacity and TAXES.*

**3. Revise the Master Plan**
Undo the damage caused by a Master Plan that was rammed through our town by a politically inspired and ambitious Town supervisor a few years ago.

*Why?* *Because the Master Plan downzoned our communities and gave developers the green light to transform quiet suburban neighborhoods into noisy, high-density eyesores.*

**4. Build truly affordable housing**
Ramapo should have places to live that are both affordable and equally accessible to everyone.

*Why?* *The housing developments going up around Ramapo carry astronomical price tags and are out of the reach of many community residents. As our population expands, there is a real need for affordable housing, and given the demographics of our town, that need will only increase in the future.*

**5. Oppose RLUIPA**
Join with villages such as Suffern and Airmont to fight unjust RLUIPA cases.

*Why?* *The principle of fair zoning and local control of land use must be defended in order to protect our suburban quality of life.*

**6. Allow communities to form Villages**
Applications to form the Village of Ladentown and the Village of Orchard Hills have been rejected by the current Town supervisor based on his own highly questionable judgement.

*Why?* *New York citizens are entitled by law to form villages and must be allowed to choose and control their own destinies.*

**7. Bring open government back to Ramapo**
Change the way Town Council members are chosen. Have six Council members elected by separate districts instead of having four at large members who rubber-stamp everything the Town supervisor wants.

*Why?* *Because the current Town Council serves the same special interests as the Town supervisor. Individual communities should have the right to elect Council members who will represent the specific needs of their own communities.*

**8. Reform our Planning and Zoning Boards**
These board members now do whatever is asked of them by their political controllers.

*Why?* *Board members need backbone to enforce zoning laws and to help Ramapo residents maintain their single family neighborhoods. They need to stand firm rather than capitulate to every ambitious developer out to make big bucks.*

**9. Enforce existing building and fire codes**
Schools, new housing developments and multi-family homes need code enforcement to keep us all safe.

*Why?* *Because the violation of these codes has created a dangerous situation. Emergency personnel have great difficulty responding to life threatening calls for help. Illegal building, clogged roads and outstanding fire and building violations are endangering men, women and children and are putting the lives of our firefighters and emergency workers in jeopardy.*

**10. Review tax exempt properties in Ramapo**
Keep tax exemptions for schools and legitimate religious institutions that truly deserve them. Get rid of tax exemptions that don't.

*Why?* *Fraudulent tax-exempt properties in Ramapo erode our tax base and place enormous financial pressure on the remaining taxable homes and properties.*

# Only *you* can Save Our Town

**Vote November 6TH on the Preserve Ramapo Line**

**WE NEED YOUR FINANCIAL SUPPORT.** The special interests who make money doing business with the machine are pouring money into our opponent's campaign. We cannot win without the financial support of Ramapo's homeowners and the residents of our retirement communities. Please send your most generous contribution to:
*Preserve Ramapo, P.O. Box 325, Suffern, N.Y. 10901*

**WE NEED VOLUNTEERS.** Between now and November 6th we are going to be passing out many thousands of flyers in front of supermarkets and other retail establishment. Please volunteer to give a few hours of your time to help us carry out this important work. Just send a note to *Preserve Ramapo, P.O. Box 325, Suffern, N.Y. 10901*, or send us an email with your phone number to *PreserveRamapo@optonline.net.*

**Please remind your friends to vote and keep in touch with us at:**
*PreserveRamapo.org.*

**Preserve Ramapo's Candidates:**

for Supervisor

**Anthony Melé**

for Town Board

**Linwood Carter**


**James Hyer**


**Michael Parietti**

for County Legislator

**Joe Meyers**


**Judah Lerer**

**For information on our candidates visit:**
*PreserveRamapo.org*



# Meyers establishes new precedent in Rockland politics

When Joseph Meyers was selected overwhelmingly by his local delegates, who were then ignored by the legislature, we said the voters would eventually be heard. Thursday night, Joe announced that he had collected twice the number of signatures needed on his petition for the primary--more than **500** signed **in three days.** There's machine politics, and then there are the people. As far as anyone can remember, this feat has never been accomplished before in Rockland. Click here to listen to Joe's statement. Joe Meyers has Preserve Ramapo's endorsement for legislator in the 12th District.